# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **WENDY CONNOR,** | : | **MOTION TO VACATE** |
| **Movant,** | : | **28 U.S.C. § 2255** |
| | : | |
| **v.** | : | **CRIMINAL INDICTMENT NO.** |
| | : | **1:14-CR-0217-WSD-AJB-2** |
| **UNITED STATES OF AMERICA,** | : | |
| **Respondent.** | : | **CIVIL FILE NO.** |
| | : | **1:16-CV-1016-WSD-AJB** |

## UNITED STATES MAGISTRATE JUDGE'S
## <u>FINAL REPORT AND RECOMMENDATION</u>

Movant has filed a 28 U.S.C. § 2255 motion to vacate, set aside, or correct her federal sentence entered in this Court under the above criminal docket number. The matter is before the Court on the motion to vacate, [Doc. 88], Respondent's response, [Doc. 104], and Movant's reply, [Doc. 115]. For the reasons discussed below, Movant's motion to vacate and a certificate of appealability (COA) are due to be denied.

## I.   <u>Background</u>

The grand jury sitting in the Northern District of Georgia indicted Movant, who in 2009 became Chief Operating Officer of City Capital Corporation, and Ephren Taylor, II, on fifteen counts involving conspiracy to commit mail fraud, mail fraud, wire fraud, and money laundering. (Indictment, ECF No. 1.) On October 8, 2014,

following plea negotiations, Movant was charged in a superseding criminal information with one count of interstate transportation of money taken by fraud, an April 22, 2010 interstate wire transfer of $239,000, in violation of 18 U.S.C. §§ 2314 and 2.  (Superseding Information, ECF No. 42.)

Movant pleaded guilty to the information and agreed that she was giving up the right to pursue any affirmative defenses, that her maximum term of imprisonment was ten years (120 months), and that the Court could impose up to the maximum term. (Guilty Plea and Plea Agreement at 2-3, ECF No. 45-1.)  The government agreed that all remaining counts against Movant would be dismissed and that it would bring no further criminal charges against Movant related to the charge to which she was pleading guilty.   Movant agreed that the Court could still consider the conduct underlying the dismissed counts in applying the federal sentencing guidelines. (*Id*. at 4-5.)  The parties agreed that the loss amount was more than $2,500,000 and that the number of victims was more than fifty.  (*Id.* at 5.)  The government agreed to recommend that Movant receive an acceptance-of-responsibility adjustment and to recommend that Movant be sentenced to seven years (eighty-four months). (*Id*. at 5-6, 9.)  Movant agreed that she voluntarily and expressly waived the right to

2

appeal or collaterally attack her conviction and sentence, with the exception of ineffective assistance of counsel claims.  (*Id*. at 14.)

During her October 8, 2014 plea hearing, Movant took an oath that she would testify truthfully, and the Court explained to Movant the rights that she was giving up by pleading guilty, including the right to go to trial and have the government prove her guilt beyond a reasonable doubt on all of the elements of the charged crime. (Plea Hr'g Tr. at 3, 7-14, ECF No. 69.)   Movant, under oath, stated that she understood. (*Id*.) The government stated that Movant was pleading guilty to interstate transportation of money taken by fraud and reviewed the plea agreement in detail. (*Id*. at 14-23.)  Movant confirmed that the government had accurately reviewed the agreement and further stated that she had reviewed the agreement several times with her counsel.  (*Id*. at 23.)

The Court asked Movant if anyone had forced or threatened her to plead guilty, and Movant stated, "No, sir, they haven't."  (*Id*.)  The Court asked Movant if anyone had told her that if she did not plead guilty further charges would be brought or some other adverse action would be taken, and Movant stated that no one had.  (*Id*. at 24.) Counsel explained that he and Movant had participated in extensive meetings to go over the plea agreement and weigh the evidence and that he believed Movant was

3

abundantly aware of the situation and had intelligently decided to enter the plea agreement.  (*Id*. at 25.)  Counsel further stated that he had explained to Movant the possibility of a 5K motion[1] by the government but that the government's position was that its downward variance from ten years to seven years incorporated 5K concerns.  (*Id*. at 26.)  The Court then asked Movant whether she had received sufficient time to think about her decision to plead guilty and to discuss it with counsel and whether she was satisfied with counsel.  Movant responded that, as stated by counsel, they had seriously discussed matters and she was "absolutely satisfied" with counsel's representation.  (*Id*. at 27-28.)

The government then went over the elements that it would have to prove at trial – (1) that Movant transmitted in interstate commerce property that had been taken by fraud, (2) that the property had a value of a least $5,000, and (3) that Movant knew the property had been taken by fraud.  (*Id*. at 29.)  The government stated that an investor who attended New Birth Missionary Baptist Church would testify that Movant promised him a $40,000 return if he invested $239,000 (the transfer at issue in the criminal information against Movant).  (*Id*. at 49-51.)  The government stated that

---

[1]    Under U.S.S.G. § 5K1.1, the government may file a motion stating that a defendant has provided substantial assistance in the investigation or prosecution of another and the court may depart from the guidelines.

4

evidence would show that, when Movant made that promise to the investor, she knew her representations were false and that City Capital was not keeping its promises to investors and was instead using investor funds for "returns to earlier investors, salaries and commission to City Capital executives and employees, payroll, rent, and other basic operating expenses." (*Id.*) The government further stated that the evidence would show that Movant caused the money to be wired in interstate commerce, knowing that it had been obtained from the investor by the use of false statements. (*Id.*) Movant admitted to the conduct outlined by the government and stated (1) that she had advised the victim that she would obtain authorization for him to get a twenty percent return, (2) that she sent him an e-mail stating that the company had authorized that he would receive a twenty percent return, (3) that she knew based on the way the company did business that he would not get such return, and (4) that she knew that his money would not be invested but would go into overhead and paying prior investors. (*Id.* at 53-54.) The Court asked Movant if she was guilty of the crime alleged in the information, and Movant stated, "Yes, sir." (*Id.* at 58.) The Court accepted Movant's guilty plea. (Id. at 59.)

Movant's Presentence Investigation Report (PSR) showed a base offense level of six; plus eighteen levels based on a loss amount of $5,943,285.81; plus six levels

AO 72A
(Rev.8/8
2)

based on more than 250 victims; plus two levels based on the misrepresentation that Movant was acting on behalf of a charitable, educational, religious, or political organization; plus two levels for use of sophisticated means; plus four levels because the offense involved a violation of securities law; plus three levels for Movant's role in the offense; and minus three levels for acceptance of responsibility, for a total offense level of thirty-eight, which yielded a guidelines range of 235 to 293 months, subject to the ten year (120 month) statutory maximum for the crime to which Movant had pleaded guilty.  (PSR ¶¶ 41-54 and at 26.)  Prior to sentencing, Movant asked the Court to impose a below guidelines sentence of a year and a day and outlined, among other things, her cooperation with the government, which included her (1) contacting her local Securities and Exchange Commission (SEC) office before any criminal action was taken against her, (2) giving a seven hour deposition with the SEC (which was incriminating to both herself and Taylor), (3) providing the SEC with numerous boxes of records, and (4) providing a proffer to the government.  (Def't Sentencing Mem. at 2, 6, 26, ECF No. 60; *see also* Gov't Sentencing Mem. at 29, ECF No. 59.)

At sentencing, counsel endeavored to explain Movant's mind-set by explaining her attempt to extricate herself from City Capital.  Counsel stated, "[t]he problem is when [Movant] realized what was happening with the investment, she incorrectly

AO 72A
(Rev.8/8
2)

thought that she somehow could get these people back their money, and she could not. She couldn't do it.  As opposed to just leaving then in May or June of 2010, she made the mistake of trying to stay to see if she could."  (Sentencing Tr. at 10, ECF No. 70.) In defending Movant's "mind-set," counsel stated in passing that he had represented New Birth Church and its minister.  (*Id.* at 11.)

Mr. McClinic, the person whom Movant defrauded, a retired Air Force guard and police sergeant – who had attended New Birth Church and who invested, and lost, his life savings of $239,000 after being convinced by Movant to invest – stated, "[Movant] came to my home, sat down at my dinner table, drank my iced tea, drank my sodas. We had a good conversation, thought she was an honest person . . . ." Mr. McClinic stated, "As a police officer I arrested many bank robbers. They had guns, knives and other things. [Movant and Taylor] robbed people with words and promises. There is no difference in the two.  Bank robbers and robbers use knives and weapons. They use words."  (*Id.* at 43.)  The government, in consideration of both Movant's guilt and her cooperation and in accord with the plea agreement, recommended a seven year (eighty-four month) term of imprisonment.  (Id. at 93-98.)

AO 72A
(Rev.8/8
2)

Movant took the stand and stated that she took full responsibility for her ignorance, her "drive to want to help people[,]" trying to fix things, and trying to help.[2] (*Id.* at 101, 103-06.)  Movant stated that it was "difficult for [her] to get up here and pat myself on the back when so much bad happened out of me working there.  And while I won't do that, what I will say is that I am a good person at my core" and that she hoped for an opportunity to show that to the Court, community, and the victims. (*Id.* at 105-06.)  The Court found that Movant's offense level was thirty-eight, with the guidelines range of 235 to 293 months, subject to the ten year (120 month) statutory maximum, and imposed a five year (sixty month) term of imprisonment, below the guidelines range and below the statutory maximum.  (*Id.* at 29, 120.)

In seeking collateral relief under § 2255, Movant contends that her counsel was ineffective for failing –

A.     to disclose a conflict of interest based on his prior representation of New Birth Church and its minister,

B.     to adequately review the government's evidence in relation to the plea process,

---

[2]     The knowing use of falsity/fraud to obtain another's money is a crime, without regard to a defendant's explanations or justifications for using fraud.  *See United States v. Martin*, 798 F.2d 308, 311 (8th Cir. 1986) (stating that a defendant's belief that he was owed certain monies does not excuse his use of fraud to obtain the money).

8

C.      to accurately advise Movant on accepting a plea agreement that did not include an agreement on § 5K1.1 for substantial assistance,

D.      to accurately advise the Court on Movant's substantial assistance in regard to seeking a downward departure,

E.      to properly advise Movant in regard to the loss amount and the number of victims,

F.      to object to the loss amount and the number of victims,

G.       to demand that the government submit a separate sentencing memorandum for Movant rather than a joint memorandum for Movant and her co-defendant Taylor, and

H.      to ensure that Movant would receive a § 5K1.1 from the government.

(Mot. to Vacate at 1-2, ECF No. 88.)

## II.      **28 U.S.C. § 2255 Standard**

Section 2255 of Title 28 allows a district court to vacate, set aside, or correct a federal sentence that was imposed in violation of the Constitution or laws of the United States or was imposed by a court without jurisdiction, exceeds the maximum sentence authorized by law, or is otherwise subject to collateral attack.  28 U.S.C. § 2255. Collateral relief, however, is limited.  "Once [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted," *United States v. Frady*, 456 U.S. 152, 164 (1982), and it is the movant's

burden to establish his right to collateral relief, *Rivers v. United States,* 777 F.3d 1306, 1316 (11th Cir. 2015), *cert. denied*, _ U.S. _, 136 S. Ct. 267 (2015).

Section 2255 relief "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988)) (internal quotation marks omitted). Thus, a constitutional claim of ineffective assistance of counsel generally is properly raised on collateral review in order to allow for adequate development and presentation of relevant facts. *See Massaro v. United States*, 538 U.S. 500, 505-09 (2003).

"An evidentiary hearing is not required when 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.' " *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (quoting § 2255). That is the case here, as shown in the discussion below.

## III.   **Discussion**

### A.   **Ground A**

Movant argues that counsel was ineffective for failing to disclose a conflict of interest based on his prior representation of New Birth Church and its minister.

10

(Mot. to Vacate at 1.)  Movant asserts that at no time before she accepted the plea offer did counsel reveal this conflict and that it is plausible that the conflict gave "counsel pause and he knowingly or unknowingly shirked his professional responsibility to [Movant.]"  (*Id.* at 3, 7.)  Movant states that, had she known of the conflict, she would have asked for different counsel.  (*Id.* at 8.)

Respondent argues that Movant fails to show any actual conflict of interest or any adverse effect.  (Resp't Resp. at 13-15, ECF No. 104 (citing *Pegg v. United States*, 253 F.3d 1274, 1277 (11th Cir. 2001); *Freund v. Butterworth*, 165 F.3d 839, 859 (11th Cir. 1999); and *McConico v. Alabama*, 919 F.2d 1543, 1546 (11th Cir. 1990))).  Movant replies that she "believes it was his conflict of interest that prevented . . . Counsel from zealously pursuing the 5K1.1" and from objecting to the sentencing enhancements.  (Mov't Reply at 8, ECF No. 115.)[3]

Under the Sixth Amendment, a defendant has the right to "reasonably effective" legal assistance.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To show

---

[3]     Movant *incorrectly* states that Respondent has conceded that she would have prevailed on her number-of-victims enhancement claim.  (*See* Mov't Reply at 8.) Respondent stated that the number-of-victims enhancement was the only sentencing issue that conceivably could have caused a different outcome but that, even if counsel had objected and the objection had been sustained, Movant's guidelines range would have remained well in excess of the government's recommended sentence or Movant's even lower actual sentence.  (Resp't Resp. at 23.)

11

constitutionally ineffective assistance of counsel, a petitioner must establish that (1) counsel's representation was deficient and (2) counsel's deficient representation prejudiced him or her. *Id.* at 690-92; *Bottoson v. Moore*, 234 F.3d 526, 532 (11th Cir. 2000) (stating that court may resolve an ineffective assistance claim based on either prong). Under the first prong, a petitioner must show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Under the second prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The habeas petitioner has the burden of affirmatively proving prejudice, and a "conceivable effect on the outcome of the proceedings" does not show prejudice. *Wood v. Allen*, 542 F.3d 1281, 1309 (11th Cir. 2008) (quoting *Strickland*, 466 U.S. at 693) (internal quotation marks omitted).

"Where an ineffective assistance claim is based on a conflict of interest, a petitioner 'must show first, that his attorney had an actual conflict of interest, and second, that the conflict adversely affected counsel's performance.' " *Aguilar-Garcia v. United States*, 517 Fed. Appx. 880, 881 (11th Cir. Apr. 26, 2013) (quoting *Pegg*,

12

253 F.3d at 1277).  The "court must be convinced that the conflict is actual, not merely hypothetical or speculative."  *McConico*, 919 F.2d at 1546.  To show actual conflict, a petitioner or movant must, at a minimum, "show that *either* (1) counsel's earlier representation . . . was substantially and particularly related to counsel's later representation of [petitioner], *or* (2) counsel actually learned particular confidential information during the prior representation . . . that was relevant to [petitioner's] later case."  *Freund*, 165 F.3d at 859 (quoting *Smith v. White*, 815 F.2d 1401, 1405 (11th Cir. 1987)) (internal quotation marks omitted).  "To prove adverse effect, a habeas corpus petitioner must show: (1) the existence of a plausible alternative defense strategy or tactic that might have been pursued; (2) that the alternative strategy or tactic was reasonable under the facts; and (3) a link between the actual conflict and the decision to forgo the alternative strategy of defense."  *Pegg*, 253 F.3d at 1278.

Movant fails to show any actual conflict.  Movant does not show that counsel's prior representation of New Birth Church and its minister was substantially and particularly related to counsel's later representation of Movant or that counsel actually learned confidential information relevant to Movant's case during the prior representation.  Further, Movant's suggestion – that it was plausible that the prior representation may have caused counsel to shirk his responsibility to Movant – falls

13

far short of showing an adverse effect.  Although Movant claims in her reply that she believes the conflict affected counsel "pursuing the 5K1.1" and objecting to the sentencing enhancements, (Mov't Reply at 8), as discussed below, Movant fails to show that counsel was ineffective on those matters.  Ground A fails.

### B.  Grounds B, C, and E

In Grounds B, C, and E,[4] Movant challenges counsel's assistance in regard to the plea process.  Movant states in Ground B that counsel failed to review adequately the government's evidence in relation to the plea process, in Ground C that counsel failed to advise her accurately on accepting a plea agreement that did not include an agreement on § 5K1.1 for substantial assistance, and in Ground E that counsel failed to advise Movant properly that the government must prove by a preponderance of evidence the loss amount and the number of victims.  (Mot. to Vacate at 1-2.)  Movant states that counsel did not review with her the government's evidence, discuss the strength or weakness of the government's case, or advise her that by signing a plea agreement without an agreement on § 5K1.1 she essentially waived her right to a § 5K1.1.  (*Id.* at 2-3.)  Movant states –

---

[4]      Further below, the Court also addresses Ground E as a claim that counsel was ineffective at sentencing.

> Defense counsel met with [Movant] on October 4, 2014, for her to sign
> the plea agreement.  It's important to note that at no point during this
> meeting did defense counsel go over the plea agreement in detail with
> [Movant].  Instead he chose to put the fear of God into her.  Telling her
> repeatedly how much time she would do if she didn't sign.  When
> [Movant] asked questions, he would just say she had no choice, just sign
> it and be done.  [Movant] was so upset she eventually acquiesed [sic] and
> signed the document not understanding the true contents or implications
> of signing.  He then "prepped" her on what to say in Court.

(*Id.* at 3.) Movant contends that had she "been properly advised, she would have realized her reduced culpability and lack of evidence regarding both loss and number of victims and rejected the government's plea offer.  Demanding that the United States prove the loss amount and number of victims."  (*Id.* at 8.)

Respondent argues that Movant's testimony under oath during her plea hearing demonstrates that her guilty plea was knowing and voluntary; that she received an "incredibly reasonable plea agreement that led to a sentence far, far below her Guidelines range"; and that, although she states she would have rejected the plea offer if she had been properly advised, she does not state that she actually would have proceeded to trial if she had been advised differently.  (Resp't Resp. at 15-21.)  In her reply, Movant states that she would have rejected the plea offer and proceeded to trial. (Mov't Reply at 5.)

AO 72A
(Rev.8/8
2)

*Strickland* again applies.  To succeed on a claim that a guilty plea was obtained in violation of the Sixth Amendment right to counsel, a movant must show that "(1) counsel's advice was deficient; and (2) 'but for counsel's errors, [there is a reasonable probability that] he would not have pleaded guilty and would have insisted on going to trial.' "  *Lynch v. Sec'y, Fla. Dep't of Corr.*, 776 F.3d 1209, 1218 (11th Cir. 2015) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)), *cert. denied*, _ U.S. _, 136 S. Ct. 798 (2016).  A movant's "bare allegation that he would not have pleaded guilty is insufficient to establish prejudice[.]"  *Roach v. Roberts*, 373 Fed. Appx. 983, 985 (11th Cir. Apr. 20, 2010) (citing *United States v. Campbell*, 778 F.2d 764, 768 (11th Cir. 1985)).  "[A] petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances."  *Diveroli v. United States*, 803 F.3d 1258, 1263 (11th Cir. 2015) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)) (internal quotation marks omitted).  Further, in considering the validity of a guilty plea, "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. . . [S]olemn declarations in open court carry a strong presumption of verity."  *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216-17 (11th Cir. 2014)

16

(quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)) (internal quotation marks omitted).

Movant's assertions on counsel's plea assistance in regard to reviewing the evidence and the plea agreement, advising her on § 5K1.1, and coercing her to plead guilty all fail as they are affirmatively contradicted by the record.  At her guilty plea hearing, after the government thoroughly reviewed the plea agreement on the record, Movant, under oath, agreed in open court that the government had accurately reviewed the plea agreement and that she had reviewed the plea agreement, more than once, with her counsel.  (Plea Hr'g Tr. at 14-23.)  Movant further informed the Court, under oath, that no one had forced or threatened her to plead guilty.  (*Id.* at 23-24.)  Counsel then explained to the Court (1) that he and Movant had gone through extensive meetings to go over the plea agreement and weigh the evidence, (2) that he believed Movant was abundantly aware of the situation and had intelligently decided to enter the plea agreement, and (3) that Movant was aware that the plea agreement did not include a § 5K1.1 for substantial assistance and that the government's agreement to recommend a seven year (eighty-four month) sentence incorporated § 5K1.1 concerns.  (*Id.* at 25-26.)  Almost immediately thereafter, Movant affirmed to the Court that she had received sufficient time to discuss the plea decision with counsel, had done so

17

seriously, and was "absolutely satisfied" with his representation.   (*Id*. at 27-28.) Movant's assertions that are contrary to what is borne out by the record fail.

Additionally, Movant's contention – that with different advice from counsel she would have realized the lack of evidence on the loss amount and number of victims and rejected the government's plea offer and proceeded to trial – does not bring into question her guilty plea.  The agreed upon loss amount was $2,500,000, and the agreed upon victim number was fifty.  Movant does not set forth the advice that counsel should have given her that would have shown a loss amount or victim total that was less than the amounts to which she agreed.  Movant does not show that the government would have been unable to prove the agreed upon amounts by a preponderance of the evidence.  If the Court had used *only* the agreed upon $2,500,000 loss amount and fifty victim number, Movant's total offense level would have been thirty-six (instead of thirty-eight) and her guidelines range would have been 188 to 235 (instead of 235-293), still far above the government's recommended sentence and the actual sentence that Movant received.   *See* U.S.S.G. § 2B1.1(b)(1)(J) and (b)(2)(B) (2014); (PSR ¶¶ 43, 44, 54.)

AO 72A
(Rev.8/8
2)

Further, (1) even *if* counsel could have reasonably[5] advised Movant that she should be held liable only for the $239,000 loss amount to the one victim involved in the count on which she admitted guilt and (2) even if such advice had been accepted as correct by the Court, Movant's total offense level would have been twenty-six and her guidelines range would have been sixty-three to seventy-eight months, still greater than the sentence that she received. *See* U.S.S.G. § 2B1.1(b)(G) (2014); U.S.S.G. Ch. 5, Pt. A; (*see also* PSR ¶¶ 41-38). The Court can perceive no rational reason why – had counsel advised her that she was responsible for less than the $2,500,000 loss amount and fifty victim number agreed to – Movant would have given up the significant benefits that she received by pleading guilty to the one count and would instead have insisted on going to trial on all fifteen counts. Movant fails to show that counsel's assistance resulted in an invalid plea.

### C.   **Grounds D and H**

In Grounds D and H, Movant contends that counsel was ineffective for failing (D) to advise the Court accurately on her substantial assistance and (H) to ensure that she received a § 5K1.1. (Mot. to Vacate at 2.) Movant states that counsel in the

---

[5]   The Court does not conclude that such advice by counsel would have been reasonable.

19

sentencing memorandum unfairly represented her cooperation by providing only one paragraph (on page 26) on her cooperation and asserts that no competent counsel would allow a client to cooperate to the extent that Movant cooperated without the benefit of a § 5K1.1. (*Id.* at 6-7.) Movant lists her cooperation as follows: (1) Movant went to her local SEC office in November 2010; (2) Movant brought Taylor to law enforcement's attention; (3) for three and one half years before she was indicted, Movant was telling the SEC of her concerns with the wrongdoing at City Capital; (4) in the Spring of 2011, Movant contacted the national SEC office, gave a seven hour deposition, and turned over twenty boxes of evidence (instead of destroying it); and (5) in 2012, Movant provided a proffer to the government regarding her knowledge of City Capital's business practices. (*Id.* at 6-7.)

The government responds that filing a § 5K1.1 motion is within the government's discretion and that its agreement to recommend a seven year sentence was far superior than the government recommending a guidelines sentence and then moving for a § 5K1.1 downward departure, which could have resulted in a higher sentence for Movant. (Resp't Resp. at 21-22.)

Under *Strickland*, Movant fails to show that counsel was ineffective in regard to a downward departure or § 5K1.1. Counsel adequately and accurately outlined for

20

the Court Movant's cooperation. *See supra* Part I; (Def't Sentencing Mem. at 2, 6, 26).

Further, although counsel did not obtain an agreement that the government would file

a § 5K1.1 motion, counsel obtained an agreement that the government would allow

Movant to plead guilty to only one count, with a ten year (120 month) statutory

maximum, and would recommend a seven year (84 month) sentence, which was both

below the guidelines range and below the statutory maximum for that one count.

There is no indication in the record that the government would have been willing to

recommend a seven year sentence *and* file a § 5K1.1 motion.  To the contrary, the

government's argument shows that it was *not* willing to recommend both, i.e., the

government argues, "[i]nstead of recommending a Guidelines sentence, with some

credit under § 5K1.1, the Government agreed to cap [Movant's] sentence at 10 years

and agreed to recommend a seven year sentence because of her cooperation." (Resp't

Resp. at 21.)  Further, had counsel convinced the government that, instead of agreeing

to let Movant plead guilty to one count and recommending a seven year term, it should

file a § 5K1.1 motion to depart from the guidelines range, which would have been at

least 235 to 293 months, it is not at all clear that there would have been a reasonable

probability of a more favorable sentencing outcome for Movant.  Grounds D and H

fail.

**D.** **Grounds E and F**

In Grounds E and F, Movant asserts that counsel was ineffective for failing (E) to advise Movant properly that the government must prove by a preponderance of evidence the loss amount and the number of victims or (F) object to the loss amount and the number of victims.  (Mot. to Vacate at 2.)  Movant states that counsel failed to object to the six-point enhancement for the number of victims or require that the government submit proof on the number of victims, loss amount, and restitution,[6] and that the government violated the spirit of the plea agreement in seeking the enhancement.  (*Id.* at 8-9.)  Movant contends that exculpatory evidence to defend against the enhancement was available in the government's file, that counsel made no effort to obtain the evidence, and that, had counsel obtained the evidence, she would not have received the six-point victim enhancement and the loss amount would have been lowered.  (*Id.* at 9.)

Respondent argues that counsel was not ineffective for failing to object at sentencing to the loss amount on which Movant agreed in her guilty plea.  (Resp't Resp. at 23.)  Respondent further argues that counsel's failure to object to the

---

[6]     Section 2255 may not be used to challenge restitution. *Mamone v. United States*, 559 F.3d 1209, 1211 (11th Cir. 2009).

22

250 victim enhancement was non-prejudicial because the agreed upon fifty victim minimum would have resulted in a guidelines range (188-235 months) far in excess of the government's eighty-four month recommended sentence and the sixty month sentence Movant actually received.  (*Id*.)

Applying *Strickland*, the Court agrees with Respondent for the reasons argued by Respondent.  Movant's attempt to show that counsel was ineffective at sentencing on the loss amount and number of victims fails because (1) any objection in contradiction to the agreed on loss amount and victim number would have failed and (2) the guidelines range for the agreed on loss amount and victim number far exceeded the government's recommended sentence and the sentence Movant actually received. Further, Movant does not set forth what evidence counsel could or should have provided that would have shown a different loss amount or victim total.  Movant therefore fails to show prejudice.

**E.    <u>Ground G</u>**

In Ground G, Movant argues that counsel was ineffective for failing to demand that the government submit a separate sentencing memorandum for Movant instead of a joint memorandum for Movant and Taylor.  (Mot. to Vacate at 2.)  Movant contends that the government's joint memorandum was an "overt action by the government to

sully [Movant] with the actions of Mr. Taylor[,]" which should not be allowed. (*Id.* at 9.) Movant asserts that, had they gone to trial, their trials should have been severed, and counsel was ineffective for allowing a joint sentencing memorandum by the government. (*Id.* at 10.)

Respondent argues that there is nothing that counsel could have done to force the government to file two sentencing memoranda and that, further, the joint memorandum benefitted Movant in that the contrast between Movant and Taylor placed Movant in a favorable light.[7] (Resp't Resp. at 21.)

Under *Strickland*, Movant fails to show that there is any reasonable probability of a different sentencing outcome had counsel been able to obtain a court order that required the government to file a separate sentencing memorandum for Movant. This ground fails.

## IV.   <u>Certificate of Appealability (COA)</u>

Under Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the

---

[7]      Taylor pleaded guilty to conspiracy to commit wire fraud, received a 235 month term of imprisonment, and is responsible for over fifteen million dollars in restitution. (Taylor J., ECF No. 65.) Movant, in contrast, received a sixty month sentence and is responsible for less than six million dollars in restitution. (Mov't J., ECF No. 66.)

24

applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." The Court will issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The applicant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Melton v. Sec'y, Fla. Dep't of Corr.,* 778 F.3d 1234, 1236 (11th Cir. 2015) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)) (internal quotation marks omitted), *cert. denied*, _ U.S. _, 136 S. Ct. 324 (2015).

It is recommended that a COA is unwarranted because it is not debatable that Movant fails to show that her counsel provided ineffective assistance. If the Court adopts this recommendation and denies a COA, Movant is advised that she "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts.

**V.  Conclusion**

For the reasons stated above,

25

IT IS RECOMMENDED that Movant's motion, [Doc. 88], to vacate, set aside, or correct her federal sentence be **DENIED** and that a COA be **DENIED**.

The Clerk of Court is **DIRECTED** to withdraw the referral of this § 2255 motion to the undersigned Magistrate Judge.

IT IS SO RECOMMENDED and DIRECTED, this _4th_ day of _April_, 2017.

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

26